UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRYANA RICHARDSON,<br><br>    Plaintiff,<br>v.<br><br>RONALD IKE, individually, and<br>CITY OF EAST ST. LOUS, ILLINOIS,<br><br>    Defendants. | No.:_____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Now comes the Plaintiff, by her attorneys, and for her complaint against Defendants Ronald Ike, individually, and City of East St. Louis, Illinois, an Illinois municipal corporation, states as follows:

**Introduction**

1. This matter arises under Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e *et seq.*, the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101 *et seq.*, and the Fourth and Fourteenth Amendments of the Constitution of the United States. Plaintiff was employed as a secretarial intern at the Police Department of the Defendant City of East St. Louis, Illinois. On her first day of work, Defendant Ronald Ike sexually harassed her and caused her to flee from the workplace. Thereafter multiple persons, including City officials, attempted to keep her quiet; then unknown persons kicked down the door and shot up her parents' house. Plaintiff seeks compensatory and punitive damages, attorney's fees, expenses and costs.

**Jurisdiction and Venue**

1

2. Plaintiff invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a) and 42 U.S.C. § 2000e-5 to hear and decide her claims under federal law. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and decide Plaintiff's claims under Illinois state law.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 42 U.S.C. § 2000e-5(f)(1)(B)(3) because all events giving rise to this action occurred within the Southern District of Illinois.

4. On January 28th and 29th, 2015, Plaintiff filed complaints against Defendant Ronald Ike and Defendant City of East St. Louis, Illinois with the Illinois Department of Human Rights ("IDHR") alleging sex discrimination and sexual harassment. On October 23, 2015, Plaintiff received Notices of Substantial Evidence and Right to Sue letters regarding the foregoing complaints from the Illinois Department of Human Rights. This action is filed within 90 days of receipt of the foregoing notices. Plaintiff has complied fully with the administrative prerequisites of Title VII and the Illinois Human Rights Act.

**Parties**

5. Plaintiff Terryana Richardson is a 26-yr. old female person who resides in the City of East St. Louis, Illinois.

6. Defendant Ronald Ike was the former Asst. Police Chief of the City of East St. Louis, Illinois. At all relevant times herein Defendant Ike was acting under color of law and within the scope of his employment as Asst. Police Chief. He is being sued in his individual capacity. Upon information and belief, Defendant Ike is a resident of East St. Louis, Illinois.

7. Defendant City of East St. Louis, Illinois is an Illinois municipal corporation which has the capacity to sue and be sued. It has its main offices at 301 River Park Dr., East St. Louis, Illinois 62201.

### Statement of Facts Common to All Counts

8. Plaintiff began working as in intern in the Summer Youth Employment Program, a program operated by the Emerson Park Development Corporation in East St. Louis, when she was 17 years old. The purpose of this program was to help disadvantaged young persons age 16-24 to get job experience and to eventually obtain full-time employment. At all relevant times herein, the Summer Youth Employment Program was funded by the Illinois Department of Human Services and the Illinois Department of Commerce and Economic Opportunity. Emerson Park Development Corporation is a nonprofit corporation located in East St. Louis which operates numerous youth employment programs for poor young persons in East St. Louis.

9. In the course of her employment as an intern and prior to her employment by the Defendant City of East St. Louis, Plaintiff worked at various job sites within the East St. Louis, including at Tomorrow's Builders YouthBuild Charter School, a charter school formerly operated by Emerson Park Development Corporation, and at the Hazel Bland Promise Center, a nonprofit corporation which operates a private school serving students with severe disabilities. For all these jobs, Plaintiff worked 40 hrs. per week and received a paycheck from Emerson Park Development Corporation. At all relevant times herein, while Plaintiff was employed as an intern at any of the job sites selected for her, Plaintiff was expected to work at the job site according to the schedule of the job site employer, perform all work assigned to her by the job site employer (usually unskilled clerical or customer service

work, but all reasonable work assignments at the direction of the job site employer), and remain on the job until the end of the assignment. Work assignments sometimes ended at the end of summer but sometimes lasted through fall and winter months.

10. During the summer of 2014, Plaintiff's employment as an intern at Hazel Bland Promise Center unexpectedly terminated. On August 25, 2014, Plaintiff was informed by Vickie Forby, the executive director of the Emerson Park Development Corporation, that she would thereafter be employed as an intern at the East St. Louis Police Department, located at City Hall in East St. Louis. Forby told Plaintiff that Cortez Hood, a budget analyst in the City's human resources department, would be her supervisor. Plaintiff met with Hood that afternoon and made arrangements to report for work the following day at the Police Department.

11. Plaintiff began working for the Police Department on the morning of Aug. 26, 2014. At that time she was assigned to sort traffic tickets in the records office by Lisa Woodhouse, a clerk in the office. At about 10:00 AM that morning, Defendant Ronald Ike, then the Assistant Police Chief, approached Ms. Woodhouse and told her he had a lot of filing to be done and requested that Plaintiff be allowed to work for him. Woodhouse agreed for Plaintiff to work for Defendant Ike.

12. Plaintiff accompanied Defendant Ike to his office on the second floor of the East St. Louis City Hall. Defendant Ike gave her filing materials but immediately began talking to Plaintiff about another employee who formerly had sex with him in his office, about other women who had sex with him, about his participation in sexual orgies and threesomes with his friends, about frequently returning to his office to find women naked, and about his preference for women with "big, juicy booties," ones he could hold with two hands.

13. Defendant Ike told Plaintiff he had the only key to his office. He showed her his key and told her "whatever happens in his office stays in the office." Then Defendant Ike briefly left the office. Plaintiff remained seated and continued to work because she believed that Defendant Ike had locked the door. After a very short time Defendant Ike came back, called the Plaintiff "weak," told her that he had expected to find her naked when he returned.

14. Defendant Ike again briefly left the office. Once again Plaintiff did not leave because she believed that Defendant Ike had locked the door. When he then returned he told Plaintiff "he wanted to touch her booty to see if it was real." Then he rubbed his genital area against Plaintiff's arm, told her not to be afraid, and told her "he wanted her to feel something." At that time he sat on the edge of Plaintiff's desk and blocked her access to the office door, causing Plaintiff to fear an imminent sexual attack. At all relevant times herein, Plaintiff was unable to continue working because of Defendant's Ike's conduct and restrained from leaving Defendant Ike's office.

15. Plaintiff did not consent to any of the foregoing actions by Defendant Ike.

16. Plaintiff was finally able to leave Defendant Ike's office when he agreed to get lunch for both of them. After Defendant Ike departed to buy lunch, Plaintiff first talked to Woodhouse to confirm that she would have to continue to work with Defendant Ike in the afternoon, then then fled to her mother's home in tears. Later she called Vickie Forby and went to Emerson Park Development Corporation to meet with Forby.

17. Immediately after speaking to the Plaintiff on the telephone, Forby called Cortez Hood to complain about the incident between Plaintiff and Defendant Ike. Hood said he would call Forby back. Hood then went to talk to Defendant Ike but inadvertently recalled Forby's cellphone number so Forby could hear the entire conversation. During Hood's conversation

with Defendant Ike, Ike called Forby a filthy name, admitted to Hood that he may have "rubbed up" against Plaintiff, but said this was consensual and they were just playing around.

18. Plaintiff and Vickie Forby then went to City Hall to meet with Mayor Alvin Parks, Chief of Police Michael Floore, City Manager Deletra Hudson, and Cortez Hood. At this meeting Forby advised that she'd heard everything Defendant Ike had said to Cortez Hood. She reminded Mayor Parks that several East St. Louis police officers had recently been accused of sexual misconduct, such as Bobby Cole, and that sexual harassment had been reported previously between Walter Hill, a city employee, and other female summer interns from Emerson Park Development Corporation who were employed at East St. Louis City Hall. As a result of the previous incident of sexual harassment of interns, Mayor Parks had assured Forby that summer interns would be assigned in the future according to their sex. Chief Floore asked how this could have happened again, since female interns were supposed to be placed only with female city employees and male interns were supposed to be placed only with male city employees. Forby told these officials that Plaintiff should only have been assigned to work with a woman and never with Defendant Ike. She told them that Defendant Ike had previously harassed students at Tomorrow's Builders YouthBuild Charter School and that she had barred him permanently from the premises. Following this conversation, Plaintiff gave city officials a brief written statement of what happened. Plaintiff was not contacted again by any of these officials.

19. When Forby spoke to Cortez Hood on the telephone, he told her that Defendant Ike had sexually harassed other women in the past and that the City of East St. Louis made a confidential financial settlement with at least one of these women. Near the end of the

6

meeting between Plaintiff and city officials, City Manager Deletra Hudson also told Forby that Defendant Ike had sexually harassed women in the past.

20. Following this meeting, Plaintiff went to her parents' home. Shortly thereafter Larry Hampton, Sr., a City of East St. Louis Fire and Police Commissioner, spoke to Plaintiff's mother at her job about the incident, then came to the parents' home to speak to Plaintiff and her father. He told them that he'd heard about the incident and came to see what he could do to "squash" the matter. He said that he'd been asked to "fix it." After Plaintiff reported that she'd just returned from a meeting with the Mayor, the Police Chief, the City Manager, and Vickie Forby, Hampton told her that "Ike was on his own with this one" but that that "our pastor better not find out about this." Plaintiff was very concerned about this statement because her pastor is the same as Police Chief Michael Floore, and she didn't want her pastor involved.

21. Later on the evening of Aug. 28, 2014, Lisa Woodhouse came to Plaintiff's parents' house, asking where the Plaintiff lived and about her current whereabouts. She stated that she wanted to check up on the Plaintiff. The following day, Anthony Tarvin, then chair of the Board of Directors of Emerson Park Development Corporation, called Vickie Forby. He told her he was calling on behalf of Walter Hood., the former principal of Tomorrow's Builders YouthBuild Charter School operated by the Emerson Park Development Corporation. Upon information and belief, Walter Hood is the father of Defendant Ike. Tarvin asked Vickie Forby if there was anything which could be done to "fix" this problem. Forby told him to stay out of it.

22. The following day, Plaintiff did not return to work at the East St. Louis Police Department because of the hostile and offensive working conditions which existed there.

7

Plaintiff understood that officials of the City of East St. Louis intended to investigate her complaints, but she was never informed of the outcome of any such investigation. No one from the City of East St. Louis spoke to her again about this matter.

23. Immediately thereafter Plaintiff learned of a rumor campaign in East St. Louis to the effect that Plaintiff was a person with loose morals, that she was only interested in Ronald Ike's money, and that Plaintiff was going to get hurt if she pursued her claims against Ike. Plaintiff is informed and believes that Defendant Ronald Ike was the source of these rumors.

24. Plaintiff filed her complaint with the Illinois Department of Human Rights on or about October 5, 2015. Upon information and belief, Plaintiff was the intended victim of an attack shortly thereafter, although Plaintiff is unsure of the exact date of the incident. Two masked men kicked the door down at Plaintiff's parents' home. At that time Plaintiff's car was parked in the driveway but she was not present. Plaintiff's three children and her mother were inside the home. The two masked men forcibly entered the home but said nothing and took nothing. Instead they shot up the ceiling of the house with a shotgun and then left. When the Plaintiff learned of this attack, she assumed that someone was trying to send her a message to cease pursuit of her discrimination claim. Plaintiff immediately left her own home, took her children, and moved in with her sister.

25. Within several days of the incident between Plaintiff and Defendant Ike, Vickie Forby received instructions from the Illinois Department of Commerce and Economic Opportunity to immediately reassign all students working at job sites with the City of East St. Louis and not to assign any more interns to job sites operated by the City of East St. Louis. Plaintiff was then reassigned to work at Tomorrow's Builders YouthBuild Charter School, where she worked until the end of her assignment in 2014.

26. At all relevant times herein, Defendant Ronald Ike was in full uniform, carried his revolver, and wore his badge. Because of his position of authority within the Police Department, Defendant Ike was Plaintiff's supervisor at the time of the foregoing incident.

27. As a result of the misconduct described above, Plaintiff has suffered damages, including but not limited to emotional distress and anguish.

28. The Defendant City of East St. Louis has a policy and practice of discovering but failing to remedy ongoing sexual misconduct of women and girls by its employees and police officers, including Defendant Ronald Ike.

29. The Defendant City of East St. Louis has a policy and practice of failing to properly train, supervise, discipline, monitor, counsel and otherwise control police officers in its employ, when for years the Defendant City of East St. Louis has known its officers engage in sexual misconduct, such as in searches and seizures of female persons and during interactions by male officers with female officers and employees of the East St. Louis Police Department

30. The Defendant City of East St. Louis has a policy and practice of allowing the filing of false reports, and giving false statement and testimony, regarding claims of sexual harassment brought by female persons against its police officers. In addition, it has promoted, advocated and allowed the police code of silence, where officers refuse to report or otherwise cover-up instances of sexual misconduct by police offers, despite their obligations under the law and police regulations, thereby causing the type of injury described above.

31. On or about Nov. 5, 2015, Plaintiff made a Freedom of Information Act request to Doreen Hoosman, City Clerk of Defendant City of East St. Louis, seeking records of complaints of women against Defendant Ronald Ike as well as records of any financial

settlements between the Defendant City of East St. Louis and any of Defendant Ike's victims. Hoosman ignored this request.

### Count I – 42 U.S.C. § 1983
### Fourth Amendment

32. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

33. As described in the foregoing paragraphs, Defendant Ike violated Plaintiff's rights under the Fourth Amendment of the Constitution of the United States to be free from unreasonable search and seizure. High-ranking officials of the Defendant City of East St. Louis, acting within the scope of their employment and under color of law, knew that Defendant Ike had a practice of engaging in sexual misconduct in a manner similar to that described above, in violation of the Fourth Amendment, but ignored and thereby tacitly approved of Defendant Ike's conduct

34. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

35. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

36. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Defendant City of East St. Louis as described above.

36. The misconduct described in this Count was undertaken by Defendant Ike within the scope of his employment and under color of law such that his employer, Defendant City of East St. Louis, is liable for his actions.

### Count II – 42 U.S.C. § 1983
### Equal Protection

37. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

38. As described more fully above, Defendant Ronald Ike denied Plaintiff equal protection of the law in violation of her rights under the Fourteenth Amendment of the Constitution of the United States.

39. The misconduct described in this Count was motivated by gender animus and constituted purposeful discrimination.

40. The misconduct described in the Count was undertake with malice, willfulness, and reckless indifference to the rights of others.

41. The misconduct described in this Count was undertaken by Defendant Ike within the scope of his employment and under color of law such that his employer, Defendant City of East St. Louis, is liable for his actions.

42. The misconduct described in this Count was undertaken pursuant to the policies and practices of the Defendant City of East St. Louis in the manner described more fully above.

### Count III – 42 U.S.C. § 1983
### Due Process

43. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

44. As described more fully above, Defendant Ike denied Plaintiff due process of law in violation of the Fourteenth Amendment of the Constitution of the United States in that he engaged in arbitrary government action that deprived her of her liberty and was so evil as to shock the conscience.

45. The misconduct described in the Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonable.

46. The misconduct described in this Count was undertaken by Defendant Ike within the scope of his employment and under color of law such that his employer, Defendant City of East St. Louis, is liable for his actions.

47. The misconduct described in this Count was undertaken pursuant to the policies and practices of the East St. Louis Police Department of the Defendant City of East St. Louis in the manner described more fully above.

### Count IV – Title VII

48. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

49. Defendants have engaged in intentional gender discrimination in the terms and conditions of the Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), which makes unlawful discrimination against employees on the basis of sex.

50. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

### Count IV- Illinois Human Rights Act

51. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

52. Defendant Ike committed sexual harassment against Plaintiff, and thereby violated the Illinois Human Rights Act ("IHRA"), by engaging in the continuous unwelcome sexual advances toward Plaintiff as described above. At all times relevant herein, he acted as Plaintiff's supervisor. His actions created a hostile working environment for Plaintiff and adversely affected her work performance, in violation of the IHRA, 775 ILCS 5/2-102(D).

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor and against Defendants Ronald Ike and the City of East St. Louis, awarding compensatory damages and attorney's fees, punitive damages against Defendant Ike in his individual capacity, pre- and post-judgment interest, as well as such other and further relief as may be just and proper.

**Jury Demand**

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY

Respectfully submitted,

/s/ *Thomas E. Kennedy, III*
**THOMAS E. KENNEDY, III**
*Law Offices of Thomas E. Kennedy, III, L.C.*
906 Olive St., Ste. 200
St. Louis, MO 63101
314-872-9041 phone
314-872-9043 fax
314-880-4461 direct
tkennedy@tkennedylaw.com

***ATTORNEY FOR PLAINTIFF***